THE STATE OF TEXAS ET AL V. B. F. CLARK.

No. A-7390. Delivered March 23, 1960.
Rehearings Overruled July 6, 1960.
(336 S.W. 2d Series 612)

12

*Will Wilson*, Attorney General of Texas, *H. Grady Chandler, Joseph G. Rollins* and *James P. Ryan*, Assistant Attorneys General, for petitioners, the State of Texas and the City of Corpus Christi.

*William H. Shireman* and *David M. Coover*, of Corpus Christi, for respondent.

MR. JUSTICE CULVER delivered the opinion of the Court.

Respondent, B. F. Clark, sued The State of Texas for damages to his real property caused by the diversion of a plot of ground dedicated to the public for park purposes to the use as a part of the right-of-way for the construction of an elevated approach to a high-level bridge over the ship channel in the City of Corpus Christi. The State, over respondent's objection, impleaded the City which had agreed to indemnify the State for any damages that might be recovered by the respondent. The trial court sustained pleas in abatement presented by the State and the City to respondent's suit based upon an asserted lack of justiciable interest. The Court of Civil Appeals has reversed and remanded for trial on the merits. 324 S.W. 2d 75. This judgment of reversal and remand will be affirmed.

The facts pleaded by the plaintiff and all pertinent circumstances have been related in detail in the Court of Civil Appeals' opinion to which we refer.

In 1913 the owners of all of the property under consideration here, conveyed to respondent's predecessor the land owned by respondent and included in the deed the following provision: "It being agreed and stipulated that all the land between the East line of said Blocks and Timon Avenue shall be and is hereby dedicated to the public."

In 1915 the owner made a re-dedication of the same property as follows: "To and for the use of the public forever, for the use of the public as a public park."

In 1917 the dedication of the property for public use and for park purposes only was reaffirmed with special reference to the 1913 deed. In 1926 the owners conveyed all of their right, title and interest in this property to W. E. Pope for the recited purpose "in order that he may re-dedicate it to the public for park purposes, should any court of proper jurisdiction hold that said former dedication has been cancelled or annulled on account of the non-use of said property for said park purposes."

In 1928 the tourist court units and other valuable improvements were erected on the land here claimed to be damaged, all of which were purchased by respondent, Clark, in 1953. The plaintiff claims that these improvements were erected and his purchase of the same were all made and done in reliance upon the dedication of the strip of land heretofore mentioned for park purposes.

Thereafter and in furtherance of plans to widen and improve United States Highway 181 by the construction of a high-level bridge and approaches thereto so as to eliminate traffic delay and congestion caused by the operation of a drawbridge across the ship channel, the City of Corpus Christi conveyed by quitclaim deed to the State all of its right, title and interest in the dedicated park area—a long, narrow strip of approximately two and one-half acres.

■ The authorities distinguish the interest that abutting owners might have in park properties in respect to the manner of acquisition and dedication. Where the City has purchased and owns the property outright, even though it had been dedicated and used for park purposes, the City may sell and devote the same to other uses as the governing body may see fit subject to statutory or charter limitations. On the other hand, where the property has been given or dedicated by private parties to the public for park purposes, the City must recognize the interest of abutting property owners who have purchased relying on the dedication and the rights of those owners to the continued use of the property for park purposes. Reichelderfer v. Quinn, 287 U.S. 315, 77 L. Ed. 331, 53 S. Ct. 177; Clark v. City of Providence, 16 R.I. 337, 15 A. 763, 1 L.R.A. 725; Slavich v. Hamilton, 201 Cal. 299, 257 p. 60; 18 Am. Jur., Eminent Domain, Sec. 227, p. 861, 83 A.L.R. 1435.

■■ Petitioners assert that notwithstanding the acts of dedication of the property for park purposes shown by the instruments filed of record and noted above, the respondent has shown no right in the area that would justify a complaint on his part on account of its diversion to the use for highway purposes for several reasons. There was no plat or map put of record showing a scheme of development of the area and existence of a park as in the ordinary case where property is developed for residential and commercial use and as was followed in the case of Fall v. Thompson, 126 Texas 326, 87 S.W. 2d 712. However, we think the old case of Oswald v. Grenet, 22 Texas 94 is sufficient authority for holding that a formal plat exhibited to prospective purchasers and the other procedure followed in the plan of modern real estate development are not essential to the validity of a park dedication. The grantors unequivocally made known, at least by 1915, their intention to dedicate the area for park purposes, and the respondent, Clark, alleged that he acted in reliance upon the manifestation of such intention in the purchase of the tourist courts in 1953. It is also said that the original dedication was "to the public" without reference to any park purpose. But until there has been an acceptance the dedication may be withdrawn or modified. City of Corpus Christi v. McCarver, 289 S.W. 2d 420, er. ref. n.r.e. It is alleged that when the surrounding area was annexed to the City of Corpus Christi the City thereafter incorporated this parkway into its park system and maintained and cared for it thereafter. We are of the opinion that the dedication of this property and reliance thereon are sufficiently pleaded and shown here so as to afford a cause of action for damages for the diversion of the parkway.

Petitioners insist that this case is ruled by judgment of the trial court in a former case brought by respondent against the City of Corpus Christi and others and affirmed by the Court of Civil Appeals in Clark v. City of Corpus Christi, 301 S.W. 2d 168, from which no writ of error was applied for. In that case the suit was instituted against the City of Corpus Christi, Nueces County, the Highway Commission of Texas, the Attorney General of Texas, and Guaranty Title & Trust Company, a corporation. Respondent in that suit sought a declaratory judgment to determine his rights and status with respect to the defendants and each of them and particularly in so far as his property rights in the park area might be taken and damaged without condemnation for the purpose of the construction of a high-level roadway bridge and approaches thereto across the ship channel and thus widen and improve State Highway 181.

The property of the plaintiff referred to in that suit was the same as we have under consideration here. The judgment of the trial court found and decreed as follows:

"That the park area had been dedicated to the public for park purposes and the fee or reversionary title by mesne conveyances, has been transferred by the original dedicators to, and is now vested in the State of Texas; that plaintiffs' property is separated from this park area by a dedicated street; that plaintiffs have no such property interest in this park area as would require that such interest be condemned and compensation paid therefor, in advance of the entry upon, and commencement of the construction of the high-level roadway on or over, such park area; that plaintiffs will have a cause of action against the State of Texas, upon being granted legislative permission to sue the State, for recovery of such damages, if any, as they may suffer because of the construction, maintenance and operation of such high-level roadway bridge, but that such damages, if any, at this time are anticipatory and speculative; that the Guaranty Title and Trust Company did not breach any covenant with plaintiffs by conveying to the State of Texas the reversionary title to the park blocks it held in trust; that the agreement of the City of Corpus Christi to indemnitfy the State of Texas against claims for damages was and is solely for the benefit of the State, and that plaintiffs are not in privity with such indemnity contract and cannot assert a cause of action thereon. * * *."

The Court of Civil Appeals in affirming this judgment cited Kingsville Independent School District v. Crenshaw, Texas Civ. App., 164 S.W. 2d 49, as authority for its holding that respondent had no property interest that would require condemnation proceedings under the right of eminent domain.

■ The Court of Civil Appeals in its opinion held that "as stated by the trial court if appellants here should suffer damages their remedy would be a suit against the State if legislative consent to sue the State would be given." [301 S.W. 2d 171]. The petitioners insist that that holding rules out any claim for damages caused by diversion of the park and relegates respondent solely to a claim for damages caused by the construction and maintenance of the elevated approaches on the basis of a nuisance. In this respect we think petitioners are mistaken. In that former suit the only point really presented to and decided by the Court of Civil Appeals was that respondent had no such property interest in the parkway area which would

require condemnation proceedings to be brought by the State of Texas. It was therefore held that the State of Texas was entitled to take possession of the property under its deed from the City of Corpus Christi without bringing suit against the respondent to condemn any property interest that he might have in the parkway as an abutting property owner. The Court did not hold that the respondent had no interest that would support a claim for damages for the loss of his rights in the use of the park property as such. Impliedly, at least, the Court held to the contrary. In holding that no condemnation was necessary it cited Kingsville Independent School District v. Crenshaw, supra,[1] and invoked the rule laid down in that case as follows:

"Appellees do not claim to own Chamberlain Park, but only claim that they will be greatly damaged, as abutting property owners, if it is abandoned for park purposes. The law does not require that damages must be paid before the property can be taken, therefore, the School District has a right to take the property and the only remedy available to appellees is a suit for damages. McCammon & Lang Lumber Co. v. Trinity & B.V.R. Co., 104 Texas 8, 133 S.W. 247, 36 L.R.A., N.S. 662, Ann. Cas, 1913E, 870; Shelton v. City of Abilene, Texas Civ. App., 80 S.W. 2d 351; Duvall v. City of Dallas, Texas Civ. App., 27 S.W. 2d 1105; Rische v. Texas Transportation Co., 27 Texas Civ. App. 33, 66 S.W. 324."

The only basis for the Court's holding that the respondent would have a suit for damages against the State of Texas was predicated on the diversion of the park property and the invasion of respondent's right therein as an abutting property owner.

■ Petitioners say assuming that the respondent, Clark, had acquired every right that could vest in him by a proper dedication of this property as a public park, he nevertheless could not recover damages for the diversion of the use of the park by a governmental agency as distinguished from a cause of action for the construction, maintenance and operation of a high-level bridge. To support that proposition they rely on City of Houston v. Wynne, Texas Civ. App.[2] 279 S.W. 916.

1.—See also same case, 252 S.W. 2d 1022, wr. ref., adopting opinion in 164 S.W. 2d 49. The first case denied temporary injunction, the second a permanent injunction.

2.—Application for writ of error refused with per curiam opinion. 115 Texas 255, 281 S.W. 544.

That was a suit by owners of lots, in an addition restricted to residential use, to enjoin the City of Houston from proceeding to erect a fire engine house on two lots in the addition that had theretofore been condemned by the City for that purpose. The injunction was denied. The plaintiffs in that suit contendedt that the lots could not be taken under condemnation proceedings without making each and all owners of lots in that addition parties to the suit and not then without paying each of them in advance for the taking, the value of their interest in said lots. The Court held that the City had the statutory right to condemn any property for public purposes and that the restrictions must be considered in the light of the eminent domain powers of the municipality. The Court further held that these restrictions conveyed no affirmative right but only those of a negative character that would prevent the owner of lots from using them in such a way as to cause damage to the lots of other residential owners and the doing of those things forbidden by the restrictions. The Court further said that Sec. 17 of Art. 1 did not apply to persons owning such negative easements, but that if in erecting the fire station the City created a nuisance the plaintiffs would have recourse for damages on that ground. Of course that would follow irrespective of the restrictions.

We are of the opinion that this case has no application to the facts here. The rights asserted here by the respondent Clark to this park property were affirmative in nature rather than negative. The holding in Kingsville in clearly to the contrary of the petitioner's proposition.

Petitioners urge that this case is controlled by the law announced in San Antonio Conservation Society et al v. The City of San Antonio, 250 S.W. 2d 259, wr. ref. That suit was brought by the Conservation Society, a cultural organization organized to protect the river and its banks against encroachment and to preserve it as a place of beauty and recreation. The Society, joined by a number of individuals property owners and taxpayers, sought on its own behalf and as representative of all of the inhabitants of San Antonio a mandatory injunction requiring the removal of a vehicular bridge from across the river and for a judgment declaring the ordinance of the City authorizing the construction of the bridge to be null and void. Although two of the numerous parties-plaintiff alleged that their properties abutted on the river and that the erection and maintenance of the bridge would damage and depreciate their value, the plaintiffs only pleaded that damages be awarded to the City of San Antonio. The principal ground, if not the only one,

urged in that case by the plaintiffs, was an attack upon the validity of the City ordinance. The Court of Civil Appeals in holding that the plaintiffs had no justiciable right, did not purport to pass upon the rights of an abutting property owner who had alleged damages peculiar to himself and not suffered in common with others in the surrounding territory, but treated all of the plaintiffs as a class. The authorities cited in support of that holding simply invoked the general rule, namely, that where the damage complained of is common to all, the action must be brought by the lawfully constituted guardian of the public interest. 1 Texas Jur. 2d., Actions, Sec. 8; City of San Antonio v. Strumberg, 70 Texas 366, 7 S.W. 754; Adkins v. Rawls, Texas Civ App., 182 S.W. 2d 509.

The Court of Civil Appeals in this case held that "The measure of damages is the reasonable market value of the property immediately before the diversion less such value immediately thereafter, and such damages must be peculiar to the property owner as distinguished from those suffered in common with others generally." This statement of the rule is generally correct. However, in view of the fact that this case is being remanded for trial on its merits, and in order to assist the trial court in expediting that trial, we will discuss briefly both the questions of how the damages are to be calculated, and the extent of and for the infringement of what rights of the respondent such damages may be recovered.

The property owned by the respondent, upon which his tourist court stands, fronts on Avenue C. The long narrow parkway taken by the State lies between Avenue C and Timon Boulevard, the latter is now and has been for many years a portion of United States Highway 181, one of the main arteries entering and passing through the City of Corpus Christi. Actually what the respondent seeks to recover is the diminution in value of his land brought about by the erection of the high-level approaches to the bridge along and across Avenue C from his property. The rights of respondent in the parkway are, to some extent at least incidental, and are material as they bear, if at all, upon his claim for damages caused by the new elevated highway construction. If Timon Boulevard and Highway 181 had merely been widened to take in the parkway without the erection of the columns and bents to support an elevated highway, respondent's pecuniary damage in the loss of his rights in the parkway would probably not have been considerable. The view from his property would have still been uninterrupted, the volume of traffic would not have been increased, the noise

and dust and other conditions would hardly have varied. Undoubtedly, the State had the right to use the right-of-way occupied by Highway 181 as it existed prior to the acquisition of the parkway in constructing any improvements to the highway it saw fit without becoming liable in damages to the respondent since his property did not abut on the highway. In McCammon & Lang Lumber Co. v. Trinity & B.V.R. Co., 104 Texas 8, 133 S.W. 247, 36 L.R.A. N.S. 662, the Court discusses three situations that arise out of the occupation of streets by a condemning authority, (1) where the person seeking compensation owned a fee to the center of the street, (2) where he did not own the fee but owns lots abutting on the street with the right of access, light and air, (3) where he owned neither the fee nor abutting lots, but did own other land so situated that he suffered damages peculiar to his situation as a result of the construction and operation and was entitled to the compensation under the doctrine of nuisances. If the State had seen fit to construct these improvements on its own right-of-way without acquiring title to the parkway it would be no more liable for the new construction upon its right-of-way than a private individual would be for building on his own property as he saw fit. Gainesville, H. & W. R. Co. v. Hall, 78 Texas 169, 14 S.W. 259, 9 L.R.A. 298; Heilborn v. St. Louis Southwestern R. Co. of Texas, 52 Texas Civ. App. 575, 113 S.W. 610; City of Amarillo v. Gray et al., 304 S.W. 2d 742, reversed on other grounds, [City of Amarillo v. Stockton] 158 Texas 275, 310 S.W. 2d 737; Trinity & S. Ry. Co. v. Meadows, 73 Texas 32, 11 S.W. 145, 3 L.R.A. 565; Southwestern Public Service Co. v. Moore, 119 Texas 391, 29 S.W. 2d 329. Respondent then is only entitled to recover for the diminishment in value of his property caused by the diversion of the parkway to that portion of the elevated structure resting upon the parkway. His damages therefore must be assessed as though the elevated structure already existed on Highway 181 and the State acquired this park property only for the purpose of widening the elevated roadway. It would be wholly inequitable to allow the respondent damages based on the difference in value in his property before and after the completion of the entire project when he would have suffered no recoverable damage if the construction had not been widened to include the parkway in which he asserts an interest.

The case will be remanded for trial on its merits in accordance with the views herein expressed. The judgment of the Court of Civil Appeals is affirmed.

Opinion delivered March 23, 1960.

ON MOTION FOR REHEARING.

MR. JUSTICE CULVER delivered the opinion of the Court.

The State in its motion for rehearing takes the position that under the 1913 deed from Swearingen and Follensbee to Hirsch and Wells the dedication of the property referred to as the park or parkway being "to the public" was irrevocable under the circumstances in this case. The State further insists that the attempted rededication in 1915 executed by Rincon Improvement Company by Hazen Follensbee, Vice-President, dedicating the property "to and for the use of the public forever, for the use of the public as a public park," and the instrument executed in 1917 by Swearingen and Follensbee declaring that the intention of the dedicators in the 1913 deed was that the strip of land be dedicated "to the public use for park purposes only" could not operate to limit the easement and the general right already vested "in the public." They rely on Lamar County v. Clements, 49 Texas 347, 354; Adams v. Rowles, 149 Texas 52, 228 S.W. 2d 849; Fort Worth & D. S. P. Ry. Co. v. Judd, (Texas Civ. App. 4 S.W. 2d 1032, wr. dism.) ; City of Corsicana v. Zorn, 97 Texas 317, 78 S.W. 924. These cases assert the general rule that where lots are sold with reference to a recorded plat then as against purchasers of such lots the dedication is irrevocable, absent consent by those purchasers. That undoubtedly is a sound statement of the law but we are not concerned here with that proposition.

■ In the first place we say that the dedication "to the public" would seem to indicate a use and enjoyment of the property by the general public, as for a meeting place or for some kind of diversion. Secondly, the instruments executed in 1915 and 1917 do not attempt revocation but rather purport to explain what was meant by dedication "to the public." Presumably these instruments have been of record during all of these years and while the record does not show any express consent or concurrence by subsequent purchasers, neither are any objections alleged to have been raised. It is difficult to see how the rights of such purchasers might thus have been infringed upon in any manner. For example, the following statement appears in 26 C.J.S., Dedication, Sec. 46a(3), p. 500:

"Thus, when nothing appears in the act of dedication to indicate for what particular use the donation of land is made to the public, parol evidence is admissible to define and limit any purpose for which it was in fact devoted."

■ This case comes to us on the pleadings. The only matters of evidence shown in the record are the documents attached to the plaintiff's petition as exhibits. We agree with the Court of Civil Appeals in its ruling that the pleas in abatement filed by the State and the City are to be treated in the nature of exceptions to the merits of the alleged cause of action and therefore all of the allegations of the plaintiff's petition are to be taken as true. Our decision here generally is to be construed only as holding that the respondent, Clark, has stated a cause of action.

The City calls our attention to the fact that a portion of the real estate used here for tourist court purposes was never at any time owned by the original grantors who purported to make the dedication, but was derived from other sources. We do not attempt here to pass upon the effect of that fact on Clark's claim for damages.

We might say that in the absence of maps or plats of the property claimed to have been owned by Clark giving lot and block numbers and showing its relation to streets and highways, it has been quite difficult to understand the lay of the land, which may account for some of the immaterial errors, the parties say, we have made in summarizing the facts, such as our reference to Timon Boulevard as being a part of Highway 181 since that highway was rerouted in 1951 so that now it embraces only that portion of Timon Boulevard where the bridge and its approaches are being constructed.

All motions for rehearing are overruled.

Opinion delivered July 6, 1960.